## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DAVID HAYES, individually and on behalf
of all others similarly situated,

      Plaintiff,

v.

GENERAL MILLS, INC. and GENERAL
MILLS SALES, INC.,

      Defendants.

Case No.

**FIRST AMENDED
CLASS ACTION COMPLAINT**


**JURY DEMANDED**

Now comes the Plaintiff, DAVID HAYES ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, and for his class action First Amended Complaint against the Defendants, GENERAL MILLS, INC. and GENERAL MILLS SALES, INC., ("Defendants"), Plaintiff alleges and states as follows:

## PRELIMINARY STATEMENTS

1.    This is an action for damages, injunctive relief, and any other available legal or equitable remedies, for violations of Illinois Consumer Fraud and Deceptive Businesses Practices Act ("ILCFA"), 815 ILCS 505/1 *et seq*., common law fraud, unjust enrichment, and breach of warranty, resulting from the illegal actions of Defendants, in intentionally labeling its food products with false and misleading claims that they contain no artificial flavors, when Defendants' products contain synthetic Malic Acid. Malic Acid is a common food additive associated with tart flavors. Plaintiff alleges as follows, upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest or costs and is a class action in which members of the class are citizens of a State different from the Defendants.

3.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to this claim occurred in this District.

## PARTIES

4.     Plaintiff is an individual who was at all relevant times residing in Glendale Heights, Illinois.

5.     On information and belief, Defendant General Mills, Inc. is a Delaware corporation whose principal place of business is located in Minneapolis, Minnesota.

6.     On information and belief, Defendant General Mills Sales, Inc. is a Delaware corporation whose principal place of business is located in Minneapolis, Minnesota.

7.     At all times relevant hereto, Defendants were engaged in the manufacturing, marketing, sale, and distribution of food products.

## FACTS COMMON TO ALL COUNTS

8.     Defendants manufacture, advertise, market, sell, and distribute food products throughout Illinois and the United States under brand names which include, but are not limited to "Fruit by the Foot," "Gushers," "Fruit Roll-Ups," "Betty Crocker Fruit Flavored Snacks," "Mott's," "Fiber One," and "Sunkist."

9.     During the Class Period the following list of products (the "Products") were advertised as containing no artificial flavors when they in fact contained synthetic Malic Acid:

a.     Tie-Dye Fruit by the Foot;

2

b.      Ninja Power Punch Fruit by the Foot;

c.      Color by the Foot Fruit by the Foot;

d.      Strawberry Fruit by the Foot;

e.      Sweet & Fiery Fruit by the Foot;

f.      Mood Morphs Fruit Punch Gushers;

g.      Sour Triple Berry Shocks Gushers;

h.      Blastin' Berry Hot Colors Fruit Roll-Ups;

i.      Wild Berry Fruit Roll-Ups (mini and regular size);

j.      Tropical Tie-Dye Fruit Roll-Ups;

k.      Carnival Fruit Roll-Ups;

l.      Strawberry Fruit Roll-Ups;

m.      Strawberry Craze Fruit Roll-Ups (mini and regular size);

n.      Despicable Me Betty Crocker Fruit Flavored Snacks;

o.      Dora the Explorer Betty Crocker Fruit Flavored Snacks;

p.      Pokémon Betty Crocker Fruit Flavored Snacks:

q.      Hello Kitty Betty Crocker Fruit Flavored Snacks:

r.      Scooby Doo Betty Crocker Fruit Flavored Snacks;

s.      Tom and Jerry Betty Crocker Fruit Flavored Snacks;

t.      Teenage Mutant Ninja Turtles Betty Crocker Fruit Flavored Snacks;

u.      SpongeBob Betty Crocker Fruit Flavored Snacks;

v.      Shark Bites Betty Crocker Fruit Flavored Snacks;

w.      Star Wars Betty Crocker Fruit Flavored Snacks;

x.      Thomas and Friends Betty Crocker Fruit Flavored Snacks;

3

y.      Trolls Betty Crocker Fruit Flavored Snacks;

z.      Mott's Original Assorted Fruit Snacks;

aa.     Mott's Mixed Berry;

bb.     Mott's Fruity Centers;

cc.     Mott's Strawberry Apple;

dd.     Mott's Fruity Rolls Strawberry Splash;

ee.     Fiber One Mixed Berry Fruit Flavored Snacks;

ff.     Fiber One Assorted Fruits; and

gg.     Sunkist Fruit Snacks.

10.     During the Class Period Plaintiff purchased many of the Products.

11.     Plaintiff's most recent purchase was on August 19, 2019.

12.     All of the Products contain artificial DL-Malic Acid. Therefore, the fruit flavors of Defendant's products are at least partially artificial, but Defendants intentionally advertise and label the Products as containing no artificial flavors.

13.     Persons, like Plaintiff herein, have an interest in purchasing products that do not contain false and misleading claims with regards to the inclusion of artificial ingredients in those products.

14.     By making false and misleading claims about the ingredients contained in their products, Defendants impaired Plaintiff's ability to choose the type and quality of products he chose to buy.

15.     Therefore, Plaintiff has been deprived of his legally protected interest to obtain true and accurate information about his consumer products, as required by Illinois and Federal law.

4

16.     As a result, Plaintiff has been misled into purchasing candy products he would not have otherwise purchased.

17.     A flavor is a substance the function of which is to impart taste. *See* 21 C.F.R. § 101.22(a)(1) and (3).

18.     Taste is the combination of sensations arising from specialized receptor cells located in the mouth. Gary Reineccius, *Flavor Chemistry and Technology* § 1.2 (2d ed. 2005). Taste can be defined as sensations of sweet, sour, salty, bitter, and umami. However, limiting taste to five categories suggests that taste is simple, which is not true. *Id.* For example, the taste of sour includes the sourness of vinegar (Acetic Acid), sour milk (Lactic Acid), lemons (Citric Acid), apples (Malic Acid), and wines (Tartaric Acid). *Id.* Each of those acids is responsible for unique sensory characteristics of sourness. *Id.*

19.     Fruit flavors are the sum of the interaction between sugars, acids, lipids, and a blend of volatile compounds. Y.H. Hui, *et al.*, *Handbook of Fruit and Vegetable Flavors*, p. 693 (2010). The content of sugars, mainly glucose and fructose, and its ratio to the content of acids, such as citric and malic acid, determine the sweetness of fruits. *Id*

20.     Malic Acid (molecular formula $C_4H_6O_5$) is the common name for 1-hydroxy-1, 2-ethanedicarboxylic acid. Malic Acid has two isomers, or different arrangements of atoms in the molecule, L-Malic Acid, and D-Malic Acid. 21 C.F.R. § 184.1069. L-Malic Acid ***occurs naturally*** in various fruits. *Id.* (emphasis added). D-Malic Acid ***does not occur naturally***. *Id.* (emphasis added). D-Malic Acid is most commonly found as a Racemic Mixture, DL-Malic Acid, which is commercially made from petroleum products.

5

21.    An isomer is a molecule sharing the same atomic make-up as another, but differing in structural arrangements. Dan Chong and Jonathan Mooney, *Chirality and Stereoisomers* (2019)[1] Stereoisomers contain different types of isomers, each with distinct characteristics that separate each other as different chemical entities with different chemical properties. *Id.* Stereoisomers differ from each other by spatial arrangement, meaning different atomic particles and molecules are situated differently in any three-dimensional direction by even one degree. *Id.* An enantiomers is a type of stereoisomer that is a mirror-image and cannot be superimposed. *Id.* It can be helpful to think of enantiomers as right-hand and left-hand versions of the same molecular formula. D-Malic Acid and L-Malic Acid are enantiomers.

22.    The following are skeletal formulas of the enantiomers D-Malic Acid and L-Malic Acid:



L-Malic acid

D-Malic acid                                    2

_____

[1] https://chem.libretexts.org/Bookshelves/Organic_Chemistry/Supplemental_Modules_(Organic_Chemistry)/Chirality/Chirality_and_Stereoisomers

[2] The only structural difference between D-Malic Acid and L-Malic Acid is that one Hydroxide (OH⁻) is attached to each different enantiomer at a different angle. The solid cone and the dashed-line cone represent the stereochemical differences. Straight lines represent bonds on the same plane as the paper. Solid cones represent bonds pointed towards the observer and dashed-line cones represent bonds pointed away from the observer.

23.     Sweetness and tartness are important contributors to the states and flavor perception of fruit juices. Y.H. Hui, *et al.*, *Handbook of Fruit and Vegetable Flavors*, p. 693 (2010). Organic acids such as Malic Acid in apples and pears, and Tartaric and Malic Acid in grapes, contribute to the tartness of the fruits' juices. *Id.* The **sugar to acid ratios** have a **great impact** on the perceived sweetness and tartness of fruit juices, as well as their flavor perception, balance, and overall consumer acceptability. *Id.* (emphasis added).

24.     Malic Acid is a key organic acid in the flavors of many fruits, as evidenced by its high concentration in those fruits. The following charts depict the concentrations of Malic Acid in the characterizing fruit flavors of Defendant's products:

**Table 8.7.** Concentrations of malic acid (MA; mg g$^{-1}$ FW) in the flesh of some ripe temperate fruits and some leaves and roots. For leaves and roots, nitrate and ammonium refer to the form of nitrogen on which the plants were grown.

| Fruits | MA level | Reference |
|---|---|---|
| Apple | 4.8–14.7 | Fuleki *et al.* 1994 |
| Blackberry | 0.5–6.0 | Wrolstad *et al.* 1980 |
| Blueberry (highbush) | 0.47–0.50 | Markakis *et al.* 1963 |
| Blueberry (lowbush) | 5.0 | Kalt and McDonald 1996 |
| Cherry (sweet) | 5.0–8.5 | Girard and Kopp 1998 |
| Cherry (sweet) | 8.5–10 | Kelebek and Selli 2011 |
| Cherry (sweet) | 6.3–14 | Ballistreri *et al.* 2013 |
| Citrus (orange) | 0.6–2.0 | Ting and Attaway 1971 |
| Citrus (tangerine) | 1.8–2.1 | Ting and Attaway 1971 |
| Citrus (grapefruit) | 0.4–0.6 | Ting and Attaway 1971 |
| Citrus (lemon) | 1.7–2.6 | Ting and Attaway 1971 |
| Citrus (lime) | 2.0 | Ting and Attaway 1971 |
| Currant (black) | 0.7–1.7 | Rodriguez *et al.* 1992 |
| Currant (red) | 0.5–2.1 | Rodriguez *et al.* 1992 |
| Currant (red) | 0.3–0.5 | Nour *et al.* 2011 |
| Currant (white) | 0.4 | Rodriguez *et al.* 1992 |
| Peach | 8.0 | Byrne *et al.* 1991 |
| Peach | 2.0–7.0 | Dirlewanger *et al.* 1999 |
| Pear | 1.6–2.0 | Drake and Eisele 1999 |
| Plum (damson) | 7.0 | García-Mariño *et al.* 2008 |
| Plum (European) | 20.0 | Lombardi-Boccia *et al.* 2004 |
| Plum (Japanese) | 7.6–15.9 | Robertson *et al.* 1992 |
| Plum (Japanese) | 8.0–10.0 | Singh *et al.* 2009 |
| Raspberry | 0.14–1.7 | Rodriguez *et al.* 1992 |
| Strawberry | 1.5–2.8 | Moing *et al.* 2001 |
| **Leaves** | | |
| Tobacco (nitrate) | 11.0 | Pucher and Vickery 1949 |
| Tobacco (ammonium) | 0.8 | Pucher and Vickery 1949 |
| Barley (nitrate) | 4.3 | Kandlbinder *et al.* 1997 |
| Barley (ammonium) | 0.3 | Kandlbinder *et al.* 1997 |
| **Roots** | | |
| Barley (nitrate) | <0.13 | Kandlbinder *et al.* 1997 |
| Barley (ammonium) | <0.13 | Kandlbinder *et al.* 1997 |

[3]

---

[3] Robert Walker and Franco Famiani, *Horticultural Reviews, Organic Acids in Fruits*, (Vol. 45, Ch. 8 2018).

Table I. Acids Naturally Present in Fruits

| Fruit | Predominant Acid | Secondary Acids |
|---|---|---|
| Apple | Malic Acid (95%*) | Tartaric Acid, Fumaric Acid |
| Apricot | Malic Acid (70%*) | Citric Acid, Tartaric Acid |
| Cherry | Malic Acid (94%*) | Tartaric Acid |
| Grape | Malic Acid (60%*) | Tartaric Acid |
| Grapefruit | Citric Acid | Malic Acid |
| Guava | Citric Acid | Malic Acid |
| Lime, Lemon | Citric Acid | Malic Acid |
| Mango | Citric Acid | Malic Acid, Tartaric Acid |
| Orange | Citric Acid | Malic Acid |
| Peach | Malic Acid (73%*) | Citric Acid |
| Pear | Malic Acid (77%*) | Citric Acid |
| Pineapple | Citric Acid | Malic Acid |
| Raspberry | Citric Acid | Malic Acid, Tartaric Acid |
| Strawberry | Citric Acid | Malic Acid, Tartaric Acid |
| Tamarind | Tartaric Acid | Citric Acid, Malic Acid |
| Watermelon | Malic Acid (99%*) | Fumaric Acid |

*% of the total acid in the fruit

For more information: Bartek Ingredients Inc. • 421 Seaman St. • Stoney Creek, Ontario L8E 3J4 • Canada
Tel: (905) 662-3292 • (905) 662-1127 • Order desk: 1-800-263-4165 • Fax: (905) 662-8849
www.bartek.on.ca • sales@bartek.on.ca

4

25. When chemical components of a solution are added to that solution, the previous combination of chemicals found in that solution changes. Likewise, adding DL-Malic Acid to a fruit juice solution containing L-Malic Acid would change the concentration of Malic Acid in the solution and the ratio of total Malic Acid to sugars in that solution.

26. Natural sugars – like glucose, fructose, and sucrose – combined with artificial DL-Malic Acid in a ratio engineered to resemble the natural chemical combination of sugar and L-Malic Acid found in the characterizing fruit flavors of Defendant's products is not equivalent to the natural flavor of those characterizing fruits. Likewise, a natural chemical combination of sugar and L-Malic Acid, altered by adding artificial DL-Malic Acid, is no longer equivalent to the

---

[4] Daniel Sortwell and Anne Woo, *Improving the Flavor of Fruit Products with Acidulants*, p. 1 (1996), http://citeseerx.ist.psu.edu/viewdoc/download?doi=10.1.1.548.4424&rep=rep1&type=pdf.

original chemical combination of sugar and L-Malic Acid, and therefore no longer the natural flavor.

27.   Irrespective of the purpose Defendant claims DL-Malic Acid was added to its products, DL-Malic Acid has the same effect on the products' fruit flavors. Defendant does not have the ability to command DL-Malic Acid to only perform certain functions, and Defendant should not be allowed to decide which Malic Acid constitutes flavor and which Malic Acid constitutes only a flavor enhancer or Ph balancer.

28.   Defendants include DL-Malic Acid to help make their products taste tart and fruity.

29.   Defendants had the option to add naturally extracted L-Malic Acid to their products, or to add a naturally manufactured acid such as Citric Acid to their products, but they instead intentionally used artificial DL-Malic Acid because it was likely cheaper or more accurately resembled natural flavors than Citric Acid or other acids.

30.   The Illinois Food, Drug, and Cosmetic Act ("IFDCA") incorporates all food additive regulations of the Federal Food, Drug, and Cosmetic Act. 410 ILCS 620/21(d).

31.   Under the Federal Food, Drug, and Cosmetic Act ("FFDCA"), artificial flavor is defined as "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 C.F.R § 101.22(a)(1).

32.   DL-Malic Acid is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof.

33.     A combination of sugar and DL-Malic Acid in a ratio resembling a fruit flavor cannot be derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof.

34.     Likewise, a combination of sugar, natural L-Malic Acid, and artificial DL-Malic Acid combined in a way to resemble the natural ratio of sugar and L-Malic Acid found in the characterizing fruits of Defendant's products cannot be derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof.

35.     A combination of sugars and artificial DL-Malic Acid engineered to resemble the natural ratio of sugars and natural L-Malic Acid that make up the natural flavor of the characterizing fruit of Defendants' products is not a natural flavor. Put more simply, the natural flavor of the fruits in controversy is heavily dependent on a specific ratio of sugar and L-Malic Acid, while Defendants flavors depend upon a ratio of sugar and DL-Malic Acid.

36.     Under the FFDCA, a flavor enhancer is a substance "added to supplement, enhance, or modify the original taste and or aroma of a food without imparting a characteristic taste or aroma of its own." 21 C.F.R. § 170.3(o)(11).

37.     Under the FFDCA, PH balancers are "substances added to change or maintain active acidity or basicity, including buffers, acids, alkalis, and neutralizing agents." 21 C.F.R. § 170.3(o)(23).

38.     DL-Malic Acid under certain circumstances could function as a flavor enhancer or PH balancer, such as when Malic Acid is not a core component of the natural flavor of the food.

11

For example, Malic Acid added to vinegar (Ascetic Acid) dishes like barbecue pork, coleslaw, or pickled eggs would most likely not fundamentally alter the underlying vinegar flavors.

39.     Under these circumstances, artificial DL-Malic Acid fundamentally alters the original combination of sugar and natural L-Malic Acid core to fruit flavors, so that the flavor of the Products are no longer a natural ratio of sugar and L-Malic Acid but instead are an artificial ratio of sugar and DL-Malic Acid.

40.     Under the FFDCA, a primary flavor identified on the front of a food product label is referred to as a "characterizing flavor." 21 C.F.R. § 101.22.

41.     The FFDCA further defines a "characterizing flavor" as flavors identified by "…labeling, or advertising of a food [making] any direct or indirect representations with respect to the primary recognizable flavor, by word, vignette, e.g., depiction of a fruit or other means." 21 C.F.R. § 101.22(i).

42.     If the food products contain any artificial flavor that simulates, resembles or reinforces the characterizing flavor, the name of the characterizing flavor "shall be accompanied by the word(s) 'artificial' or 'artificially flavored'… e.g., 'artificial vanilla', 'artificially flavored strawberry', or 'grape artificially flavored.'" 21 C.F.R. § 101.22(i)(2).

43.     Under the IFDCA, a food is misbranded if its labeling is false or misleading in any particular, including if it contains any artificial flavoring, coloring, or chemical preservative, unless it bears labeling stating that fact. 410 ILCS 620/11(a)(k).

44.     The following are examples of the Products' labeling that explicitly violate FFDCA and IFDCA regulations:









45.     The Products' fruit flavors containing DL-Malic Acid resemble the natural characterizing fruity flavors Defendants claim are in their products.

46.     Plaintiff purchased Defendants' products because Defendants' packaging claims that their products do not contain artificial flavors.

13

47.     Plaintiff would not have been able to understand that the Products contained artificial flavoring without an advanced understanding of organic chemistry and without performing chemical analysis on the Products.

48.     Furthermore, due to Defendants' intentional, deceitful practice of falsely labeling the Products as containing no artificial flavors, Plaintiff could not have known that the Products contained artificial flavors.

49.     Plaintiff was unaware that the Products contained artificial DL-Malic Acid when he purchased them.

50.     Plaintiff and the Class were deceived into paying money for products they did not want because the Products were labeled as containing no artificial flavors.

51.     Worse than the lost money, Plaintiff and the Class were deprived of their protected interest to choose the foods and ingredients they ingest.

52.     Plaintiff and the class members are not, and should not be, required to chemically test the food products they purchase to know the true contents of those products.

53.     Defendants, and not Plaintiff or the Class, knew or should have known that the Products' express labeling stating "no artificial flavors," was false, deceptive, and misleading, and that Plaintiff and the Class members would not be able to tell the Products contained artificial DL-Malic Acid unless Defendants expressly told them, as required by law.

54.     Defendants employ professional chemists to create the chemical flavor formulas of Defendants' products. Therefore, Defendants through there employees knew or should have known that DL-Malic Acid is not naturally occurring, and that by adding DL-Malic Acid to their products the natural flavoring, if any was ever actually added to the products, would be fundamentally changed.

55. On information and belief, Defendants through their employees did know that DL-Malic Acid was not naturally occurring and would fundamentally alter any natural combination of sugar and L-Malic Acid in their products, but chose to include DL-Malic Acid because it was cheaper for Defendants than using natural L-Malic Acid and because they did not believe their customers were well educated enough to know the difference.

56. As a result of Defendants' acts and omissions outlined above, Plaintiff has suffered concrete and particularized injuries and harm, which include, but are not limited to, the following:

     a. Loss of money spent on products he did not want to buy;

     b. Wasting Plaintiff's time; and

     c. Stress, aggravation, frustration, inconvenience, emotional distress, mental anguish, loss of trust, loss of serenity, and loss of confidence in product labeling.

## CLASS ALLEGATIONS

57. Plaintiff brings this action on behalf of himself and all others similarly situated, as a member of the proposed class (the "Class"), defined as follows: All persons within the United States who purchased the Products within ten years prior to the filing of this Complaint.

58. Plaintiff also brings this action on behalf of himself and all others similarly situated, as a member of the proposed sub-class (the "Sub-Class"), defined as follows: All persons within Illinois who purchased the Products within ten years prior to the filing of this Complaint.

59. Defendants, their employees and agents are excluded from the Class and Sub-Class. Plaintiff does not know the number of members in the Class and Sub-Class, but believes the members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

15

60.     The Class and Sub-Class are so numerous that the individual joinder of all of their members is impractical. While the exact number and identities of their members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that the Class and Sub-Class include thousands, if not millions of members. Plaintiff alleges that the class members may be ascertained by the records maintained by Defendants.

61.     This suit is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(a) because the Class and Sub-Class are so numerous that joinder of their members is impractical and the disposition of their claims in the Class Action will provide substantial benefits both to the parties and the Court.

62.     There are questions of law and fact common to the Class affecting the parties to be represented. The questions of law and fact common to the Class predominate over questions which may affect individual class members and include, but are not necessarily limited to, the following:

a.     Whether the Defendants intentionally, negligently, or recklessly disseminated false and misleading information by including the statement "no artificial flavors" on the front of the Products' packaging;

b.     Whether the Class and Sub-Class members were informed of the artificial nature of the ingredients in the Products;

c.     Whether the Products contain artificial flavoring;

d.     Whether Defendants' conduct was unfair and deceptive;

e.     Whether Defendants unjustly enriched themselves as a result of the unlawful conduct alleged above;

f.      Whether Defendants breached express warranties to Plaintiff, the Class, and the Sub-Class;

g.      Whether the statement "No Artificial Flavors" is misleading or false;

h.      Whether there should be a tolling of the statute of limitations; and

i.      Whether the Class and Sub-Class are entitled to restitution, actual damages, punitive damages, and attorney fees and costs.

63.     As a resident of the United States and the State of Illinois who purchased the Products, Plaintiff is asserting claims that are typical of the Class and Sub-Class.

64.     Plaintiff has no interests adverse or antagonistic to the interests of the other members of the Class and Sub-Class.

65.     Plaintiff will fairly and adequately protect the interests of the members of the Class and Sub-Class. Plaintiff has retained attorneys experienced in the prosecution of class actions.

66.     A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class and Sub-Class members is impracticable. Even if every Class and Sub-Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments and would magnify the delay and expense to all parties, and to the court system, resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each class member. Class treatment will also permit the adjudication of

relatively small claims by many class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

67.     The prosecution of separate actions by individual members of the Class and Sub-Class would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party class members to protect their interests.

68.     Plaintiff's claims and injuries are identical to the claims and injuries of all class and sub-class members, because all claims and injuries of all class and sub-class members are based on the same false labeling, same addition of DL-Malic Acid to fruit flavored products, and same legal theory. All allegations arise from the identical, false, affirmative written statements made by Defendants when they claimed the Products contained "No Artificial Flavors," when in reality the Products contained a combination of sugars and artificial DL-Malic Acid engineered to resemble the natural ratio of sugars and natural L-Malic Acid of the fruit flavors in controversy.

69.     Defendants have acted or refused to act in respect generally applicable to the Class and Sub-Class thereby making appropriate final and injunctive relief with regard to the members of the Class and Sub-Class as a whole.

70.     Defendants failed to comply with the requirements of the ILCFA, including but not limited to 815 ILCS 505/2, as to the Class and Sub-Class with respect to the above-alleged transactions.

71.     815 ILCS 505/2 states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with

intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

72.     The size and definition of the Class and Sub-Class can be identified through records held by retailers who stock and resell the Products, and by Defendants' own records.

## COUNT I
## VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1, *et seq.*

73.     Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 72 above as if fully reiterated herein.

74.     Plaintiff is a "person" as defined in 815 ILCS 505/1(c), as he is a natural person.

75.     Defendants are "persons" as defined in 815 ILCS 505/1(c), as they are companies, and business entities and/or associations.

76.     815 ILCS 505/2 states:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

77.     Through their representation that the Products contain no artificial flavors, Defendants made false promises, misrepresentations, concealments, suppressions, and omissions of material facts, with the intent that Plaintiff rely upon said false promises, misrepresentations, concealments, suppressions, and omissions of material facts.

78.    815 ILCS 505/10a states:

(a) Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper...

(c) [T]he Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party.

79.    In taking the actions and omissions set forth above, and making the false promises, misrepresentations, concealments, suppressions, and omissions of material facts set forth above, Defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act, including, but not limited to 815 ILCS 505/2.

80.    By reason thereof, Plaintiff is entitled to a judgment against Defendants, declaring that Defendants' conduct violated 815 ILCS 505/2, enjoining Defendants from engaging in similar conduct in the future, and awarding actual damages, punitive damages, injunctive relief, costs, and attorneys' fees.

## COUNT II
## COMMON LAW FRAUD

81.    Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 80 above as if fully reiterated herein.

82.    Through their false statements on the Products' packaging that the Products contained no artificial flavors, Defendants made false statements of material fact.

83.    At the time Defendants made their statements to Plaintiff that the Products contained no artificial flavors, they knew, or reasonably should have known, that the statements described above were false.

84.    At the time Defendants made the statements to Plaintiff, they intended to induce

Plaintiff to purchase the Products.

85.     Plaintiff relied upon the truth of the statements described above and purchased the Products, only to find that the Products contain artificial DL-Malic Acid.

86.     As a result of their reasonable reliance upon Defendants' false statements of material fact as set forth above, Plaintiff and other members of the Class and the Sub-Class have suffered concrete and particularized injuries, harm, and damages which include, but are not limited to, the loss of money spent on products they did not want to buy, stress, aggravation, frustration, inconvenience, emotional distress, mental anguish, loss of trust, loss of serenity, and loss of confidence in product labeling.

<u>**COUNT III**</u>
<u>**UNJUST ENRICHMENT**</u>

87.     Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 86 above as if fully reiterated herein.

88.     Plaintiff conferred monetary benefits to Defendants by purchasing the Products.

89.     Defendants have been unjustly enriched by retaining the revenues derived from Plaintiff's purchase of the Products based on the false statements that the Products contain no artificial flavors.

90.     Defendants' retention of the revenue they received from Plaintiff and the Class and Sub-Class is unjust and inequitable because Defendants' false statements caused injuries to Plaintiff and the Class and Sub-Class, as they would not have purchased the Products if they knew the Products contained artificial flavors.

91.     Defendants' unjust retention of the benefits conferred on them by Plaintiff and the Class and Sub-Class entitles Plaintiff and the Class and Sub-Class to restitution of the money they paid to Defendants for the Products.

## COUNT IV
## BREACH OF EXPRESS WARRANTIES

92.     Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 91 above as if fully reiterated herein.

93.     Defendants, as the manufacturer, designer, marketer, and seller of the Products, expressly warranted that the Products contain no artificial flavors on the front of the Products' packaging.

94.     The Products' packaging also includes pictures of fruit, and names the flavors of the Products as grape, strawberry, apple, and other identifiable fruit flavors, further creating and reinforcing the express warranties that the Products contain no artificial flavors.

95.     Defendants' express warranties that the Products contain no artificial flavors were part of the basis of the bargain between Plaintiff, the Class, and Defendants.

96.     However, the Products contain DL-Malic Acid and do not conform to the express warranties Defendants made to Plaintiff and the Class and Sub-Class that the Products contain no artificial flavors.

97.     Furthermore, as described above Defendant had actual knowledge of the above listed defects contained in the Products.

98.     As a direct result of Defendants' breaches of the express warranties it made to Plaintiff and the Class and Sub-Class, Plaintiff and the Class and Sub-Class have been injured, as they would not have purchased the Products on the same terms if they knew the Products contained artificial flavors, and they did not gain the same benefits they bargained for when purchasing the Products.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment against Defendants as follows:

a.    An order certifying the Class and the Sub-Class and appointing Plaintiff as Representative of the Class and the Sub-Class;

b.    An order certifying the undersigned counsel as Class and Sub-Class Counsel;

c.    An order requiring Defendants, at their own cost, to notify all members of the Class and Sub-Class of the unlawful, unfair, deceptive and unconscionable conduct herein;

d.    Judgment against Defendants in an amount to be determined at trial;

e.    An order for injunctive relief prohibiting such conduct by Defendants in the future;

f.    Judgment against Defendants for Plaintiff's attorneys' fees, court costs, and other litigation costs; and

g.    Any other relief deemed just and proper by this Court.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues in this action so triable, except for any issues relating to the amount of attorneys' fees and costs to be awarded should Plaintiff prevail on any of his claims in this action.

RESPECFULLY SUBMITTED,

DAVID HAYES

By:    /s/ Todd M. Friedman
        Attorney for Plaintiff
        Illinois Attorney No. 6276496
        Law Offices of Todd M. Friedman, P.C.
        21550 Oxnard Street, Suite 780
        Woodland Hills, California 91367
        Phone: (323) 306-4234
        Fax: (866) 633-0228
        tfriedman@toddflaw.com

        /s/ David B. Levin
        Attorney for Plaintiff
        Illinois Attorney No. 6212141
        Law Offices of Todd M. Friedman, P.C.
        333 Skokie Blvd., Suite 103
        Northbrook, Illinois 60062
        Phone: (224) 218-0882
        Fax: (866) 633-0228
        dlevin@toddflaw.com

        /s/ Steven G. Perry
        Attorney for Plaintiff
        Illinois Attorney No. 6330283
        Law Offices of Todd M. Friedman, P.C.
        333 Skokie Blvd., Suite 103
        Northbrook, Illinois 60062
        Phone: (224) 218-0875
        Fax: (866) 633-0228
        sperry@toddflaw.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on October 8, 2019, a copy of the foregoing First Amended Complaint was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

<u>/s/ Todd M. Friedman</u>
Attorney for Plaintiff