IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID HAYES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MILLS, INC., and GENERAL MILLS SALES, INC.,<br><br>Defendants. | Case No.: 1:19-cv-05626<br><br>Judge: Honorable Robert M. Dow, Jr.<br><br>Oral Argument Requested |

**GENERAL MILLS, INC. AND GENERAL MILLS SALES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND FED. R. CIV. P. 12(b)(6)**

## I. INTRODUCTION

Plaintiff David Hayes asserts that certain General Mills, Inc., and General Mills Sales, Inc.'s Fruit Flavored Snacks are misleadingly labeled as having "No Artificial Flavors." He contends this claim is false because the products contain an ingredient—malic acid—that necessarily functions as a flavor in the Fruit Flavored Snacks. FAC ¶ 12. Plaintiff is incorrect. Food and Drug Administration (FDA) regulations establish several functions for malic acid, including as a "pH control agent"—an ingredient that helps regulate the balance of acidity during the manufacture of certain foods—a "flavor enhancer—an ingredient that does not provide or reinforce the characterizing flavor—or a "flavoring agent and adjuvant." Further, an ingredient's actual function controls whether the ingredient is considered a flavor for labeling purposes. And General Mills specifically identifies "natural flavors" as an ingredient in the statutorily mandated ingredient list. General Mills can hardly describe malic acid as a flavor when another ingredient, not malic acid, serve that purpose. General Mills' statement that the product contains "no artificial flavors" is true. Neither FDA regulations nor their Illinois counterparts require food companies to disclose malic acid as a flavor when it performs a different function in food, nor do they prevent food companies from making a "No Artificial Flavors" claim on a product that contains synthetic, non-flavor ingredients that do not function as flavors.

Plaintiff David Hayes tries to plead around the FDA's regulatory regime by asserting that the malic acid in the Fruit Flavored Snacks combines with the Snacks' sugar to simulate a fruit flavor. FAC ¶¶ 19, 23, 35. Then, based on this assertion, he alleges that the packages labeled "No Artificial Flavors" are misleading. But the error lies with Plaintiff. The malic acid in the Fruit Flavored Snacks does not function as a flavor; the FAC's allegations—taken as true—merely confirm that malic acid, like sugar, impacts flavor as a flavor enhancer. Flavor enhancers are not flavors. Plaintiff does not allege that malic acid imparts its own flavor in the Fruit Flavored Snacks, nor could he. After all, there's no malic acid flavored Snack.

Plaintiff's allegations are insufficient to meet the "reasonable consumer" standard that applies to the FAC's Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") claim. No "reasonable consumer" thinks an ingredient should be labeled as a "flavor" even when it does not function as one. Likewise, Plaintiff cannot plausibly allege that the Fruit Flavored Snacks at issue are misleadingly labeled as having no artificial flavors when his allegations, taken as true, confirm that the malic acid in the Fruit Flavored Snacks does not function as a flavor. Plaintiff's remaining claims, for unjust enrichment, fraud, and breach of warranty, are dependent on the same theory of deception as the ICFA claim. Under settled law, because the ICFA claim fails, these claims necessarily fail as well.

To the extent Plaintiff alleges that General Mills must label its Fruit Flavored Snacks as "artificially flavored," that claim is preempted: Federal law does not impose its flavoring regulations on ingredients, like the malic acid at issue here, that do not function as flavors. As Plaintiff's claim would impose a labeling requirement on General Mills that is "not identical" to federal labeling requirement, the claim is preempted.

Finally, Plaintiff's request for an injunction should be dismissed because the FAC does not allege any threatened future injury to the Plaintiff. Courts have repeatedly held that risk of future injury is required for an injunction, and requests for that form of relief are frequently dismissed in false advertising cases like this one where allegations of future harm are lacking.

## II. BACKGROUND

General Mills manufactures, distributes, and labels the Fruit Flavored Snacks at issue in this lawsuit. *See* FAC ¶¶ 8–9 (listing products).[1] The Fruit Flavored Snacks' ingredient list

[1] The FAC lists thirty-three Fruit Flavored Snacks products ranging in variety from Sunkist Fruit Snacks to Tropical Tie-Die Fruit Roll-Ups and Trolls Betty Crocker Fruit Flavored Snacks. FAC ¶ 9. Plaintiff vaguely claims that he "purchased many of the Products" during the class period. FAC ¶ 10. As argued below, defects in the FAC require dismissal of the case in full. General Mills nonetheless reserves all rights, if the case proceeds, to later challenge Plaintiff's standing to assert claims related to Fruit Flavored Snacks he did not purchase.

shows that they are flavored with fruit juice and other "natural flavors." *See* Exhibits A–D.[2] Because the Fruit Flavored Snacks are flavored with natural flavors, they bear a claim stating that they contain "No Artificial Flavors." FAC ¶ 35.

Another ingredient in the product, disclosed on Fruit Flavored Snacks' labels, is malic acid. Exhibits A–D; FAC ¶ 16. Malic acid is an FDA-approved ingredient with multiple differing potential uses. *See* 21 C.F.R. § 184.1069. Malic acid may be used in foods as a "flavoring agent and adjuvant." *Id.* But as the FDA regulations state, malic acid may also be used in foods as a "pH control agent." *See* 21 C.F.R. § 184.1069(c). pH control agents are "substances added to change or maintain active acidity or basicity, including buffers, acids, alkalies, and neutralizing agents." 21 C.F.R. § 170.3(o)(23). Malic acid may also be used in foods as a "flavor enhancer." *See* 21 C.F.R. § 184.1069(c). Flavor enhancers are substances "added to supplement, enhance, or modify the original taste and/or aroma of a food, without imparting a characteristic taste or aroma of its own." 21 C.F.R. § 170.3(o)(11). pH control agents and flavor enhancers are not "flavors"; flavors are substances whose function is to "impart or help impart a taste or aroma in food." 21 C.F.R. § 170.3(o)(12). FDA regulations likewise make clear that ingredients in food are to be labeled according to their intended function: "The term artificial flavor or artificial flavoring means any substance, *the function of which is to impart a flavor* . . . ." 21 C.F.R. § 101.22(a)(1) (emphasis added).

Notwithstanding the varying potential functions for malic acid, Plaintiff alleges that malic acid is a flavor. FAC ¶ 12. Plaintiff claims that the DL malic acid in the Fruit Flavored Snacks combine with the Snacks' sugars to create a tart taste that Plaintiff alleges provides the Snacks' characteristic fruit flavor, ignoring that "natural flavors" are disclosed on the Snacks' ingredient list separate from sugar and malic acid. FAC ¶¶ 26, 35. He further alleges that because of how

---

[2] A true and correct copy of four exemplar Fruit Flavored Snacks labels are attached here as Exhibits A–D. The FAC includes low-resolution photographs of these four exemplar labels. FAC ¶ 44. In deciding a motion to dismiss, materials referenced in the plaintiff's complaint that are central to her claim are considered part of the pleadings. *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). It is therefore appropriate for this Court to take judicial notice of the label image attached as Exhibits A–D and consider that image when deciding General Mills' Motion to Dismiss. *Id.*

some varieties of malic acid are synthesized, it is necessarily an artificial flavor. FAC ¶ 20. Plaintiff thus alleges that the Fruit Flavored Snacks labels, which accurately state that the products contain no artificial flavors, are false or misleading. FAC ¶¶ 73–98. Based on these allegations, Plaintiff claims on behalf of a putative class of national and Illinois consumers violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2, common law fraud, unjust enrichment, and breach of warranty.

## III. LEGAL STANDARDS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While the Court must accept "well-pleaded factual allegations" as true, it should not accept "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Rule 12(b)(6) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. Evaluating a complaint's plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests federal courts' jurisdiction. A plaintiff must establish federal jurisdiction over each claim and request for relief. To seek injunctive relief, a plaintiff must show a "'real and immediate' threat of future violations of their rights." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013).

## IV. ARGUMENT

Plaintiff's FAC fails because Plaintiff' does not plausibly allege that the malic acid in the Fruit Flavored Snacks functions as a flavor, and no reasonable consumer believes that non-flavoring artificial ingredients must be disclosed as artificial flavors. Plaintiff's fraud, unjust enrichment, and breach of warranty claims fail for similar reasons. To the extent Plaintiff seeks disclosure of an artificial ingredient—malic acid—as an artificial flavor, that claim runs contrary

to federal regulations and is preempted. Finally, Plaintiff lacks standing to seek injunctive relief because he does not allege he will purchase the Fruit Flavored Snacks in the future.

**A. Plaintiff does not plausibly allege that the Fruit Flavored Snacks labels are misleading to a reasonable consumer.**

Plaintiff's ICFA claim is evaluated under the "reasonable consumer" standard: "[T]o state a claim [under the ICFA], a plaintiff must allege conduct that could deceive a reasonable consumer." *In re: 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 920-21 (N.D. Ill. 2017) (citing *Phillips v. DePaul Univ.*, 19 N.E.3d 1019, 1031 (Ill. App. 2014)). Under this standard, the "allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005).

An ICFA claim that challenges a particular labeling statement as misleading does not survive review under the "reasonable consumer" standard if the plaintiff's proffered definition for that statement is illogical or implausible. *See Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756–57 (N.D. Ill. 2015) (rejecting plaintiff's interpretation of term "no refined sugars" as "not plausible" and dismissing complaint under "reasonable consumer" standard); *Galanis v. Starbucks Corp.*, 2016 WL 6037962, at *3 (N.D. Ill. Oct. 14, 2016) (dismissing ICFA claim under "reasonable consumer" standard where plaintiff's interpretation of meaning of "iced drink" on defendant's menus was "unreasonable" and contradicted by "common sense"); *see also Killeen v. McDonald's Corp.*, 317 F. Supp. 3d 1012, 1013 (N.D. Ill. 2018) (use of term "value" on fast food restaurant not misleading to a reasonable consumer where "plaintiff may not have wished to take the time to compare prices, but there is no question that doing so would have dispelled the deception on which her claims are based").

Where the plaintiff fails to allege facts sufficient to meet the "reasonable consumer" standard, courts can and do dismiss the action outright. *See Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 940 (7th Cir. 2001) (court may dismiss ICFA claim as a matter of law); *In re: 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d at 922 (dismissing

complaint at Rule 12 stage for failure to allege facts sufficient to state a claim under "reasonable consumer" standard); *Killeen*, 317 F. Supp. 3d at 1013–14 (same); *Ibarrola*, 83 F. Supp. 3d at 757–58 (same); *Galanis*, 2016 WL 6037962, at *3 (same).

Plaintiff's FAC fails to meet the reasonable consumer standard in at least two ways. First, Plaintiff's allegation that the malic acid in the Fruit Flavored Snacks functions as a flavor is implausible in light of other allegations in the FAC, FDA regulations, and judicially noticeable materials. Second, Plaintiff does not plead facts to support the assertion that a "reasonable consumer" considers any ingredient a flavor if it might potentially be used for that function, even if the ingredient does not actually function as a flavor in the food under consideration.

**1. Plaintiff does not plausibly allege that the malic acid in the Fruit Flavored Snacks functions as a flavor.**

Plaintiff asserts that the Fruit Flavored Snacks' "No Artificial Flavors" labels are misleading because the malic acid in the Snacks functions as a flavor. FAC ¶ 12. Plaintiff alleges the following "facts" to support this assertion: malic acid interacts with the sugar in the Snacks to simulate the natural acid and sugar combination in fruit, which gives the Snacks their characteristic fruit flavor. *See, e.g.*, FAC ¶¶ 19, 23, 35. In other words, according to Plaintiff, malic acid and sugar act together to flavor the Fruit Flavored Snacks. This allegation is implausible for several reasons.

*First*, Plaintiff's allegations, if true, establish that malic acid functions in the Fruit Flavored Snacks as a *flavor enhancer*, not a flavor. Not everything that imparts a taste in food is a flavor. Indeed, the FDA has refused to identify as flavors many ingredients "whose effect on the taste of food is an important consideration in their use . . . [as] 'flavorings' when used as ingredients." U.S. Food & Drug Admin., *Compliance Policy Guides Manual: Foods, Colors & Cosmetics*, 2001 WL 34786546, at *39 (updated Mar. 20, 2015). Ingredients that affect one of the five tastes—sweet, salty, bitter, umami, sour—are typically not flavors and may not be declared as such on a product's ingredient deck. *Id.* (ingredients like citric acid, salt and cane sugar must be declared by their common and usual name, rather than as "spices" or "flavorings"

although they impact taste). These ingredients, which intensify a food's flavor by making the product sourer, saltier, or sweeter, are flavor enhancers. *See* 21 C.F.R. § 170.3(o)(11); *see also* 56 Fed. Reg. 28592-01, 28598 (1991) (flavoring "is considered to be a substance that has a flavor of its own" while a flavor enhancer "do not themselves impart flavor but rather intensify in some manner the flavors that are naturally present or are added to food").

Plaintiff alleges that malic acid and sugar serve the same function in the Fruit Flavored Snacks: According to Plaintiff, "Defendants flavors depend upon a ratio of sugar and DL-Malic Acid." FAC ¶ 35. But this proves the point that malic acid functions as a *flavor enhancer*, not a flavor. The FDA has long recognized that sweeteners like sugar are prototypical flavor enhancers, not flavors, even though they impact flavor. *See* 2001 WL 34786546, at *39 (listing sugar as a non-flavoring ingredient although it impacts flavor); 21 C.F.R. § 172.831(c) (sucralose may be used as a sweetener). Courts are in accord. *See Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 889 (C.D. Cal. 2013) ("By definition, therefore, neither sucralose nor ace-k are 'flavors,' as they do not give the product an original taste—rather, they sweeten or amplify whatever characterizing flavor it has from another source."). So, if sugar and malic acid serve the same function in the Fruit Flavored Snacks—as Plaintiff alleges, FAC ¶ 19, 23, 35—the malic acid cannot be a flavor. Rather, it, like the sugar, is a flavor enhancer. *Viggiano*, 944 F. Supp. 2d at 889. The substances that impart the Snacks characterizing flavor, and must be declared as flavors, are the natural flavors declared as such on the Snacks ingredient decks. *See* Exs. A–D; 21 C.F.R. § 101.22(h)(1).

*Second,* judicially noticeable materials confirm that the malic acid in the Fruit Flavored Snacks does not function as a flavor. FDA flavoring regulations state that flavors are not listed separately on a product's ingredient list and are instead declared only as "flavors." *See* 21 C.F.R. § 101.22(h)(1) ("The label of a food to which flavor is added shall declare the flavor in the statement of ingredients in the following way: (1) Spice, natural flavor, and artificial flavor may be declared as 'spice,' 'natural flavor,' or 'artificial flavor,' or any combinations thereof as the case may be."); *see also* U.S. Food & Drug Admin*, Overview of Food Ingredients, Additives and*

*Colors* (revised April 2010), https://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-colors ("Q: How are ingredients listed on a product label? A: Food manufacturers are required to list all ingredients in food on the label . . . . But some ingredients can be listed collectively as 'flavors,' 'spices,' 'artificial flavoring' . . . . without naming each one."). This distinction is important: Permitting flavoring ingredients to be labeled this way protects food manufacturers' trade secrets. 56 Fed. Reg. 28592-01, 28595 (1991).

Here, judicially noticeable documents confirm that General Mills lists malic acid as a standalone ingredient in the Fruit Flavored Snacks. Exhibits A–D. Malic acid's presence on the Fruit Flavored Snacks' ingredients list shows that it does not function as a flavor in the food, but serves another function, that as a pH control agent or flavor enhancer. The Court is therefore not obligated to accept the allegations—which are contradicted by judicially noticeable materials—that the malic acid in the Fruit Flavored Snacks is a flavor. *Dufour v. Matrisch*, 2018 WL 4073337, at *2 (N.D. Ill. Aug. 27, 2018) ("Though I usually assume all the complaint's factual allegations are true, I do not have to do so when the allegations contradict judicially-noticed facts."); *Radivojevic v. Daley*, 12 F. App'x 391, 392 (7th Cir. 2001) (affirming dismissal when judicially noticeable documents that "squarely contradict" the allegations in the complaint).

*Third*, Plaintiff's allegation that malic acid is a flavor (as opposed to a pH control agent or flavor enhancer) is particularly implausible given that FDA regulations permit malic acid in foods that may only contain natural flavoring. For example, malic acid may be added to mayonnaise, where it no doubt impacts taste by enhancing the product's natural lemon flavor. *See* 21 C.F.R. § 169.140(d)(6). But mayonnaise may be flavored only by "natural flavoring"; artificial flavors are not a permitted optional ingredient. *Id.* § 169.140(d). Likewise, malic acid is a permissible ingredient in French Dressing, 21 C.F.R. § 169.115(c)(9), and salad dressing, 21 C.F.R. § 169.150(e)(6), even though both foods may be flavored with only natural flavors. 21 C.F.R. § 169.115(c)(3) (French Dressing); 21 C.F.R. § 169.150(e)(3) (Salad Dressing). By allowing malic acid in foods that permit only natural flavors, the FDA acknowledges that malic acid is typically not a flavor, even if it has some impact on a food's taste.

*Finally*, Plaintiff alleges that the Fruit Flavored Snacks' labels violate the Federal Food, Drug, and Cosmetic Act ("FFDCA"), 21 C.F.R. § 101.22, and the Illinois state law equivalent ("IFDCA"), 410 ILCS 620/11(a)(k). FAC ¶¶ 40–44. But alleged violations of the FFDCA or IFDCA do not constitute unlawful practices within the meaning of ICFA, the sole statute under which Plaintiff purports to plead a cause of action. *See* 815 ILCS 505/2.

In any event, the Fruit Flavored Snacks' labels comply fully with state and federal law: Neither the FFDCA nor the IFDCA require ingredients that function as "pH control agents" or "flavor enhancers" be disclosed as "artificial flavors," nor do they prohibit a "no artificial flavors" claim when the product contains an artificial ingredient that acts as an FDA approved pH control agent or flavor enhancer. *See* 21 C.F.R. § 101.22(a)(1); 410 ILCS 620/11(a)(k) (food is misbranded if it bears an artificial flavoring unless it states that fact). FDA regulations provide that an "artificial flavor" is a "substance, the *function* of which is to impart flavor." 21 C.F.R. § 101.22(a)(1) (emphasis added). Thus, for an ingredient to be subject to FDA regulations concerning artificial flavoring, it must in the first instance "function" in the food as a flavor. *Id.* The classification of food ingredients according to their function is repeated in the FDA's "Definitions" regulation for food labeling, which expressly categorizes food ingredients according to their "function." *See* 21 C.F.R. § 170.3(o) ("The following terms describe the physical or technical functional effects for which direct human food ingredients may be added to foods."). As malic acid does not *function* in the Fruit Flavored Snacks as a flavor, General Mills had no duty to label the Fruit Flavored Snacks as "artificially flavored." *See Viggiano*, 944 F. Supp. 2d at 889-90 ("[S]ucralose [is not] a 'flavor.' Thus, the fact that [it is] allegedly unnatural does not render [the defendant's] 'all natural flavors' label false or misleading under FDA guidelines."); *Ivie v. Kraft Foods Global, Inc.*, 961 F. Supp. 2d 1033, 1042 (N.D. Cal. 2013).

**2. No reasonable consumer is misled by a "no artificial flavors" label when the artificial ingredient does not function as a flavor.**

Plaintiff alleges that the Fruit Flavored Snacks' labels are false or misleading because they state the Snacks contain "No Artificial Flavors" and are "naturally flavored." FAC ¶ 12. But

Plaintiff fails to plausibly allege malic acid functions as a flavor in the Fruit Flavored Snacks; malic acid is just an artificial ingredient. And no reasonable consumer interprets the phrases "no artificial flavors" to mean that the product is free from artificial *ingredients*.

FDA regulations classify ingredients according to their functions. *See* U.S. Food & Drug Admin., *Food Labeling; Declaration of Ingredients*, 56 Fed. Reg. 28592-01, 28598 (1991) (FDA regulations describe "the various functional effects of human food ingredients"). Therefore, artificial flavor means "any substance, *the function of which* is to impart flavor . . . ." 21 C.F.R. § 101.22(a)(1) (emphasis added). So, if a particular ingredient performs a non-flavoring function in the food, a plaintiff cannot rely on that ingredient's presence to allege some violation of the federal flavoring regulations. *Viggiano*, 944 F. Supp. 2d at 889-90 ("[S]ucralose [is not] a 'flavor.' Thus, the fact that [it is] allegedly unnatural does not render [the defendant's] 'all natural flavors' label false or misleading under FDA guidelines.").

A reasonable consumer understands that ingredients are declared on labels according to their function, as the Court recently explained in *Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813 (E.D. Pa. 2017). Plaintiff in *Hu* asserted claims for violation of New York's consumer protection laws by alleging the label statement "No Preservatives Added" was false because the products contained citric acid. 251 F. Supp. 3d at 816–17. The complaint contained a series of generalized assertions about citric acid's potential use as a preservative. *Id.* at 816. But the complaint did not plead any facts to show that citric acid functioned as a preservative in the defendant's products—versus some other function, such as for taste. *Id.* at 821–22.

The court dismissed the consumer protection claims, explaining that a reasonable consumer does not define the word "preservatives" so broadly that it reaches any ingredient that could act as a preservative, even if it does not perform that function in the food at issue:

> [T]he Court agrees with Defendant that Plaintiff has not adequately pleaded that a reasonable consumer would define an ingredient as a preservative regardless of its functionality—i.e., even if an ingredient does not actually preserve that particular product. While plaintiff's well-pleaded allegations are accepted as true at this stage, the Court is not required to credit legal conclusions as factual allegations. Plaintiff's allegation regarding a reasonable consumer's definition of a

> preservative is a legal conclusion, and Plaintiff has not provided any other allegations supporting her theory of the definition of a preservative.

*Id.* at 821.

Here, as in *Hu*, no reasonable consumer would interpret the term "flavors" on the Fruit Flavored Snacks to encompass an ingredient that does not actually function as a flavor in the product. *Hu*, 251 F. Supp. 3d at 821. On this point, *Hu* is in step with courts in Illinois and elsewhere that have dismissed complaints where the plaintiff proffers an overbroad and idiosyncratic definition of a term that is not shared by a "reasonable consumer." *See Tarzian v. Kraft Heinz Foods Co.*, No. 18-cv-7148, slip op. at 11 (N.D. Ill. Oct. 10, 2019) ("no artificial preservatives" claim not misleading to reasonable consumer when plaintiff failed to allege product contained artificial, as opposed to natural, citric acid); *Ibarrola*, 83 F. Supp. 3d at 757–58 (rejecting implausible definition of "no refined sugars"); *Galanis*, 2016 WL 6037962, at *3 (rejecting implausible definition of "iced" drink); *In re: General Mills Glyphosate Litig.*, 2017 WL 2983877, at *6 (D. Minn. July 12, 2017), *appeal dismissed*, 2017 WL 7668595 (8th Cir. Oct. 31, 2017) ("The Court concludes that it is not plausible to allege that the statement 'Made with 100% Natural Whole Grain Oats' means that there is no trace glyphosate in Nature Valley Products or that a reasonable consumer would so interpret the label.").

In sum, Plaintiff fails to plausibly allege that the malic acid in the Fruit Flavored Snacks functions as a flavor given its other, regulatorily approved functions as a pH control agent and flavor enhancer. Plaintiff's comparison to sugar proves this point as FDA guidance and case law establishes that sugar is a flavor enhancer, not a flavor. And Plaintiff fails to plead facts that support his (implausible) allegation that a reasonable consumer expects an ingredient to be disclosed on a label as an artificial flavor even if it does not serve that function in the product at issue. For these reasons, Plaintiff's ICFA claim should be dismissed.[3]

---

[3] Plaintiff's case is one of more than a dozen similar "malic acid" cases filed around the country. Most of these cases have made it past the pleading stage. *See, e.g.*, *Allred v. Frito-Lay N. Am.*, *Inc.*, 2018 WL 1185227, at *5 (S.D. Cal. Mar. 7, 2018) (distinction between flavor and flavor enhancer factual determination); *Morris v. Mott's LLP*, 2019 WL 948750, at *3 (C.D. Cal. Feb. 26, 2019) ("Plaintiffs plausibly allege that the malic acid used in Defendant's fruit snacks functions as a flavor."). But none of those cases involved allegations, like those here, that malic acid and sugar combine to create a fruit flavor.

**B. Plaintiff's fraud, unjust enrichment and warranty claims fail with his ICFA claim.**

Plaintiff's remaining claims—for fraud, unjust enrichment, and breach of express warranty—rely on his allegation that the Fruit Flavored Snacks' "no artificial flavors" label claim is misleading because the Snacks contain malic acid. FAC ¶¶ 82, 90, 96; *Merix Pharm. Corp. v. Clinical Supplies Mgmt., Inc.*, 59 F. Supp. 3d 865, 878 (N.D. Ill. 2014) (fraud claim requires "a false statement of material fact"); *Ibarrola*, 83 F. Supp. 3d at 759–60 (warranty claim require plaintiff to plead promise and breach of that promise).

This is the same alleged conduct that underpins Plaintiff's ICFA claim. *See* FAC ¶ 77. The ICFA claim is defective because it does not allege conduct misleading to a "reasonable consumer"; the fraud, unjust enrichment, and breach of express warranty claim necessarily fail as well. *Ibarrola*, 83 F. Supp. 3d at 760–61 ("Absent a plausible allegation of deception, the claim for unjust enrichment must fail."); *see also id.* at 756 (analyzing fraud and ICFA claim together); *Jonathan Chuang v. Dr Pepper Snapple Grp., Inc.*, 2017 WL 4286577, at *6–7 (N.D. Cal. Sept. 20, 2017) (analyzing breach of express warranty and consumer protection claims together).

**C. Plaintiff's claims are preempted.**

To the extent the FAC alleges that federal law requires General Mills to disclose that the Fruit Flavored Snacks are made with artificial flavors, that claim seeks to impose a requirement for food labeling "not identical" to the federal requirements for products containing malic acid. Accordingly, this claim is expressly preempted. *See* 21 U.S.C. § 343-1(a).

Congress enacted the Nutrition Labeling and Education Act of 1990 (NLEA) to ensure national uniformity in food labeling. *Lateef v. Phamavite LLC*, 2012 WL 5269619, at *2 (N.D. Ill. Oct. 24, 2012). To implement Congress's goal of uniformity, the NLEA contains an express preemption provision that bars any state law requirements "not identical" to the NLEA's corresponding label requirements. 21 U.S.C. § 343-1(a). The term "not identical" under the NLEA means "that the State requirement directly or indirectly imposes obligations or contains

Given sugar's undisputed status as a flavor enhancer, those allegations render Plaintiff's claims implausible.

provisions concerning the composition or labeling of food [that] . . . [a]re not imposed by or contained in the applicable [federal statute or regulation] . . . or [d]iffer from those specifically imposed by or contained in the applicable [federal statute or regulation]." 21 C.F.R. § 100.1(c)(4); *see also Turek v. General Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011) ("consistency is not the test; identity is"). So, where a complaint seeks to impose food labeling requirements that differ from those imposed by the FDA, NLEA preemption applies and dismissal is required.

Plaintiff's claims are preempted because Plaintiff fails to plausibly allege that malic acid functions as a flavor and, as such, requiring Defendant to disclose it as an "artificial flavor" is contrary to federal regulations. *See* 21 U.S.C. § 343-1(a)(3) (NLEA preemption applies to flavoring regulations). FDA regulations provide that an "artificial flavor" is a "substance, the function of which is to impart flavor." 21 C.F.R. § 101.22(a)(1). Thus, for an ingredient to be subject to FDA regulations concerning artificial flavoring, it must "function" in the food as a flavor. *Id.* If a particular ingredient performs a non-flavoring function in the food, a plaintiff cannot rely on that ingredient's presence to allege some violation of the federal flavoring regulations. *See Viggiano*, 944 F. Supp. 2d at 890; *Ivie*, 961 F. Supp. 2d at 1042.

The malic acid at issue here—just like the substances at issue in *Viggiano* and *Ivie*—can perform several different functions in food products, including as a pH control agent, flavor enhancer, or "flavoring agent and adjuvant." *See* 21 C.F.R. § 184.1069(c). And the FAC contains no plausible allegations that the malic acid in the Flavored Snacks functions as a flavor. *See* FAC ¶ 19, 23, 35. Absent a plausible allegation that the malic acid in the Fruit Flavored Snacks functions as a flavor, any demand that General Mills disclose the malic acid in the Snacks as an artificial flavor is expressly preempted.

**D. Plaintiff lacks standing to seek injunctive relief.**

To seek injunctive relief, a plaintiff must show a '"real and immediate' threat of future violations of their rights." *Scherr*, 703 F.3d at 1074. So, in a putative class action where the plaintiff alleges defendant's advertising is false or misleading and was deceived into purchasing

a product she does not want, she has no threat of future injury because she is unlikely to buy the product again in the future. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 741 (7th Cir. 2014) ("Since Camasta is now aware of JAB's sales practices, he is not likely to be harmed by the practices in the future."). "Courts in this district have interpreted *Camasta* to allow plaintiffs standing to seek injunctive relief where it is plausible the plaintiff will purchase the product again." *Tarzian v. Kraft Heinz Foods Co.*, No. 18-cv-7148, slip op. at 9 (N.D. Ill. Oct. 10, 2019) (order on motion to dismiss). "But where the complaint failed to allege that the plaintiffs were likely to repurchase the products, courts concluded that plaintiffs had no standing to seek injunctive relief." *Id.*; *see also Benson v. Fannie May Confections Brands, Inc.*, 2018 WL 1087639, at *5 (N.D. Ill. Feb. 28, 2018) ("[A]bsent some concrete basis to conclude that plaintiffs will or must purchase the product again in the future and be deceived, they cannot meet the standing requirements for injunctive relief claims."); *Burton v. Hodgson Mill, Inc.*, 2017 WL 1282882, at *7 (S.D. Ill. Apr. 6, 2017) ("The named Plaintiff is unlikely to purchase [the defendant's] product again if she is truly harmed and deterred by their advertising conduct, so she does not have standing as contemplated by *Scherr*.").

Here, Plaintiff seeks an order "enjoining Defendants from engaging in similar conduct in the future . . . ." FAC, at 23 (requesting "[a]n order for injunctive relief prohibiting such conduct by Defendants in the future"). But Plaintiff concedes he is now aware that the Fruit Flavored Snacks contain malic acid. FAC ¶¶ 12, 27–28. Moreover, Plaintiff alleges that he would not have purchased the products if he knew they contained malic acid. FAC ¶ 16. Finally, Plaintiff does not allege he plans to purchase the Fruit Flavored Snacks in the future. Thus, because Plaintiff is now aware of the alleged deception, and because he has no intention of purchasing the Fruit Flavored Snacks in the future, he lacks standing to seek any injunctive relief. *Benson*, 2018 WL 1087639 at *5; *Burton*, 2017 WL 1282882 at *7; *Tarzian v. Kraft Heinz Foods Co.*, No. 18-cv-7148, slip op. at 10 (N.D. Ill. Oct. 10, 2019) (dismissing injunctive relief where, as here, plaintiffs alleged he would not have purchased the products had they known the truth about them). This request for relief should be dismissed.

## V. CONCLUSION

For the foregoing reasons, General Mills respectfully requests that this Court grant its Motion to Dismiss and dismiss the FAC in its entirety. In the alternative, his request for injunctive relief should not proceed.

Dated: November 7, 2019

GENERAL MILLS, INC. and GENERAL MILLS SALES, INC.,

By: */s/ Lauren Watts Staniar*
Lauren Watts Staniar

**PERKINS COIE LLP**
Regina LaMonica
RLaMonica@perkinscoie.com
131 South Dearborn Street, Suite 1700
Chicago, Illinois 60603-5559
Telephone: 312.324.8400
Facsimile: 312.324.9400

Charles C. Sipos, *pro hac vice*
Lauren W. Staniar, *pro hac vice*
CSipos@perkinscoie.com
LStaniar@perkinscoie.com
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

David T. Biderman, *pro hac vice forthcoming*
DBiderman@perkinscoie.com
505 Howard Street, Suite 1000
San Francisco, California 94105-3204
Telephone: 415.344.7000
Facsimile: 415.344.7050

**CERTIFICATE OF SERVICE**

The undersigned, one of the attorneys for Defendants General Mills, Inc. and General Mills Sales, Inc., hereby certify that on November 7, 2019, she served a true and correct copy of the foregoing document via CM/ECF, which will send notification of such filing to the counsel of record listed below:

Todd M Friedman
Law Offices of Todd M. Friedman
21550 Oxnard St., Suite 780
Woodland Hills, CA 91367
(877) 206-4741
Email: tfriedman@toddflaw.com

David B. Levin
Law Offices of Todd M. Friedman, P.C.
333 Skokie Blvd., Suite 103
Northbrook, IL 60062
224-218-0882
Email: dlevin@toddflaw.com

Steven Gene Perry
Law Offices of Todd M. Friedman, P.c.
333 Skokie Blvd., Suite 103
Northbrook, IL 60062
(244) 218-0875
Email: sperry@toddflaw.com

By: */s/ Lauren Watts Staniar*
Lauren Watts Staniar

**PERKINS COIE LLP**
Lauren Watts Staniar
LStaniar@perkinscoie.com
1201 Third Avenue, Suite 4900
Seattle, Washington 98199
(206) 359-8000