IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID HAYES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MILLS, INC. and GENERAL MILLS SALES, INC.,<br><br>Defendants. | Case No. 1:19-cv-05626<br><br>Honorable Judge Robert M. Dow, Jr. |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND FED. R. CIV. P. 12(b)(6)**

Now comes the Plaintiff, DAVID HAYES ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, and for his response to Defendants', GENERAL MILLS, INC. and GENERAL MILLS SALES, INC. ("Defendants"), Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6), Plaintiff states as follows:

**I.      INTRODUCTION**

Plaintiff filed his First Amended Class Action Complaint (the "FAC") on October 8, 2019 (Doc. #20). Plaintiff's FAC describes Defendants' widespread, intentional scheme to defraud their customers by selling products with affirmative statements claiming the products contain "No artificial flavors." Plaintiff alleges the fruit flavors of Defendants' products are in fact artificial, due to Defendants' inclusion of DL-Malic Acid. Defendants filed their Motion to Dismiss (Doc. #23) Pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) and its accompanying Memorandum of Law in Support (Doc. #25) (the "MTD") on November 7, 2019.

Defendants' MTD argues that Plaintiff's FAC should be dismissed for three reasons: (1) Defendants assert that DL-Malic Acid does not function as a flavor in their products; (2) Defendants assert that Plaintiff's claims are preempted to the extent that they conflict with federal law; and (3) Defendants assert that Plaintiff does not have standing to seek injunctive relief. As Plaintiff will demonstrate, each of Defendants' arguments fails and their MTD should be denied with prejudice.

To begin with, Defendants' arguments ask the Court to determine issues of disputed fact, which is inappropriate for a motion to dismiss. In addition, Defendants' arguments pertaining to DL-Malic Acid are scientifically incorrect and misstate the basis of Plaintiff's claims. Finally, Defendants' arguments that Plaintiff does not have standing to seek an injunction are erroneous, as Defendants' conduct will harm members of the putative class and the public if allowed to continue.

## II. ARGUMENT

### A. DEFENDANTS' ARGUMENTS ARE INAPPROPRIATE FOR A MOTION TO DISMISS.

To survive a motion to dismiss, the complaint must "state a claim to relief that is plausible on its face." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

In this case, the FAC pleads factual content that allows the court to draw the reasonable inference that Defendants are liable for the misconduct alleged. First, the FAC explains in detail what the Federal Food, Drug, and Cosmetic Act ("FFDCA"), 21 C.F.R § 101.22, *et seq.*, the Illinois Food, Drug, and Cosmetic Act ("IFDCA"), 410 ILCS 620/21, *et seq.,* and the Illinois Consumer

Fraud and Deceptive Businesses Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*, require of food manufacturers. FAC ¶¶ 17, 30-31, 36-37, 40-43. Second, the FAC explains the intricate chemical nature of fruit flavors. FAC ¶¶ 18-26. Third, the FAC explains in detail how Defendants' inclusion of DL-Malic Acid in their products violates the FFDCA and the IFDCA. Defendants' violations of the FFDCA and IFDCA form the basis of Plaintiff's allegations that Defendants violated the ICFA (FAC, Count I), committed common law fraud (Count II), were unjustly enriched (Count III), and breached express warranties (Count IV). The FAC further explains how Defendants committed these violations, by including the false statement on their products' packaging that their products contain "No artificial flavors." FAC ¶¶ 27-29, 32-35, 44-55, 74-80. The facts pled by Plaintiff in the FAC are sufficient to allow this Court to draw the reasonable inference that Defendants are liable for violations of the ICFA, common law fraud, unjust enrichment, and breach of express warranties, by including artificial DL-Malic Acid in their fruit flavored products and advertising those products as containing No artificial flavors." FAC ¶¶ 9-54.

All of Defendants' arguments in their MTD ignore the well-pled facts in the FAC and assert scientifically incorrect claims regarding how artificial DL-Malic Acid functions in their products. Defendants' MTD, at p. 2. At the very least, the issues raised by Defendants' arguments are issues of fact to be decided by the trier of fact and are inappropriate for a motion to dismiss. However, as Plaintiff explains below, Defendants factual claims are erroneous and their arguments should be denied with prejudice.

### B. PLAINTIFF HAS PROPERLY ALLEGED THAT DEFENDANTS' PRODUCTS CONTAIN ARTIFICIAL FRUIT FLAVORS.

Defendant's argue that Plaintiff's FAC fails because Plaintiff does not plausibly allege that the Malic Acid in their Fruit Flavored Snacks functions as a flavor. Defendants' MTD, at p. 4. However, Plaintiff has clearly alleged how the fruit flavors of their products are artificial.

3

The issue is not whether Malic Acid itself is or is not a flavor, because Malic Acid is a component of flavors which are much more complex than a single ingredient. Rather, the real issue in this case is whether Defendants' fruit flavored products contain artificial flavors because they include artificial DL-Malic Acid. In the end, all of these issues are issues of fact to be decided by the trier of fact and are inappropriate for a motion to dismiss.

First, the FAC identifies the specific fruit flavors of Defendant's products. FAC ¶¶ 9, 40-41. Under the FFDCA, a primary flavor identified on the front of a food product label is referred to as a "characterizing flavor." 21 C.F.R. § 101.22; FAC ¶ 40. The FFDCA further defines a "characterizing flavor" as a flavor identified by "…labeling, or advertising of a food [making] any direct or indirect representations with respect to the primary recognizable flavor, by word, vignette, e.g., depiction of a fruit or other means." 21 C.F.R. § 101.22(i); FAC ¶ 41. In this case, Plaintiff has alleged that the flavors of Defendants' products are the fruits depicted on those products' labels. Plaintiff has alleged that Defendants label their products' flavors as fruit and use pictures of apples, pears, strawberries, grapes and other fruits to depict those fruit flavors. FAC ¶¶ 9, 44.

Second, the FAC explains and defines "flavor," as it relates to the allegations in this case. FAC ¶¶ 17-26. A flavor is a substance, the function of which is to impart taste. *See* 21 C.F.R. § 101.22(a)(1) and (3); FAC ¶ 17. Taste is the combination of sensations arising from specialized receptor cells located in the mouth. *See* Gary Reineccius, *Flavor Chemistry and Technology* § 1.2 (2d ed. 2005), attached hereto as Exhibit 1; FAC ¶ 18. Taste can be defined as sensations of sweet, sour, salty, bitter, and umami. However, limiting taste to five categories suggests that taste is simple, although it is not. *See* Exhibit 1; FAC ¶ 18. For example, the sour taste includes the sourness of vinegar (containing Acetic Acid), sour milk (containing Lactic Acid), lemons (containing Citric Acid), apples (containing Malic Acid), and wines (containing Tartaric Acid).

4

*See* Exhibit 1; FAC ¶ 18. Each of those acids is responsible for certain unique sensory characteristics of sourness. Exhibit 1; FAC ¶ 18. Fruit flavors are the sum of the interaction between sugars, acids, lipids, and a blend of volatile compounds. *See* Y.H. Hui, *et al.*, *Handbook of Fruit and Vegetable Flavors*, p. 693 (2010), attached hereto as Exhibit 2; FAC ¶ 19. The content of sugars in fruits, mainly glucose and fructose, and the sugars' ratio to the content of acids in the fruits, such as Malic Acid, determine the sweetness of the fruits. *See* Exhibit 2; FAC ¶ 19.

In this case, the characterizing fruit flavors of Defendants' products must be determined based upon the chemical combinations of acids and sugars, because those chemical combinations create the unique taste sensations of sweetness and sourness that are the specific characterizing fruit flavors of Defendants' products. *See* Exhibit 1; Exhibit 2; FAC ¶¶ 17-26. It is important to note that the presence of Malic Acid in fruits is associated with two of the five taste sensations, sweetness and sourness, which are the main taste sensations of Defendants' products. *See* Exhibit 1; Exhibit 2; FAC ¶¶ 17-26. Defendant cannot reasonably claim that the characterizing apple, pear, strawberry, and grape flavors of the products at issue are salty, bitter, or umami, nor has Plaintiff made any allegations in his FAC that could be construed as such.

Third, the allegations in the FAC explain and define Malic Acid. FAC ¶¶ 20-22. Malic Acid (molecular formula $C_4H_6O_5$) is the common name for 1-hydroxy-1, 2-ethanedicarboxylic acid. Malic Acid has two isomers, or different arrangements of atoms in the molecule, which are known as L-Malic Acid and D-Malic Acid. 21 C.F.R. § 184.1069; FAC ¶ 20. L-Malic Acid *occurs naturally* in various fruits. 21 C.F.R. § 184.1069 (emphasis added); FAC ¶ 20. D-Malic Acid *does not occur naturally*. 21 C.F.R. § 184.1069 (emphasis added); FAC ¶ 20.

D-Malic Acid is most commonly found as a racemic mixture, DL-Malic Acid, which is commercially made from petroleum products and is thus artificial. FAC ¶ 20. An isomer is a

5

molecule sharing the same atomic make-up as another molecule but differing in structural arrangements. *See* Dan Chong and Jonathan Mooney, *Chirality and Stereoisomers* (2019)[1]; FAC ¶ 21. Stereoisomers contain different types of isomers, each with distinct characteristics that separate each other as different chemical entities with different chemical properties. *Id.*; FAC ¶ 21. Stereoisomers differ from each other by spatial arrangement, meaning different atomic particles and molecules are situated differently in any three-dimensional direction, by even one degree. *Id.*; FAC ¶ 21. An enantiomer is a type of stereoisomer that is a mirror-image and cannot be superimposed. *Id.*; FAC ¶ 21. It can be helpful to think of enantiomers as right-hand and left-hand versions of the same molecular formula. FAC ¶ 21. D-Malic Acid and L-Malic Acid are enantiomers. FAC ¶ 21. In this case, the D-Malic Acid in Defendants' products was not created by nature; it is an artificial "right-handed" version of the natural L-Malic Acid found in the natural fruits Defendants' claim are the characterizing flavors of their products. *See* 21 C.F.R. § 184.1069; FAC ¶¶ 20-22. Furthermore, at least some portion of the L-Malic Acid in Defendants' products was created artificially because D-Malic Acid is created in a racemic mixture, or a 50/50 combination, with L-Malic Acid. FAC ¶ 21.

Fourth, the FAC explains how Malic Acid functions in fruit flavors. FAC ¶¶ 23-29. Sweetness and tartness are important contributors to the states and flavor perception of fruit juices. *See* Exhibit 2; FAC ¶ 23. Organic acids, such as malic acid in apples and pears, and tartaric and malic acid in grapes, contribute to the tartness of the fruits' juices. *See* Exhibit 2; FAC ¶ 23. The **sugar to acid ratios** have a **great impact** on the perceived sweetness and tartness of fruit juices, as well as their **flavor perception**, balance, and overall consumer acceptability. *See* Exhibit 2

---

[1] https://chem.libretexts.org/Bookshelves/Organic_Chemistry/Supplemental_Modules_(Organic_Chemistry)/Chirality/Chirality_and_Stereoisomers

(emphasis added); FAC ¶ 23. Malic Acid is a key organic acid in the flavors of many fruits, as evidenced by its high concentration in those fruits. FAC ¶ 24. The FAC includes two charts from two different scientific sources that list the concentrations of Malic Acid in more than two dozen fruits. *See* Robert Walker and Franco Famiani, *Horticultural Reviews, Organic Acids in Fruits*, (Vol. 45, Ch. 8 2018), attached hereto as Exhibit 3; Daniel Sortwell and Anne Woo, *Improving the Flavor of Fruit Products with Acidulants*, p. 1 (1996), attached hereto as Exhibit 4; FAC ¶ 24. In this case, Malic Acid's heavy influence on the flavor perception of the characterizing fruit flavors of Defendants' products is evidenced by the high concentration of Malic Acid found in the natural versions of the fruits. *See* Exhibit 3; Exhibit 4; FAC ¶ 24. For example, Mott's Original Assorted Fruit Snacks has pictures of apples on the box and ninety-five percent (95%) of the organic acid content of apples is natural L-Malic Acid. *See* Exhibit 4; FAC ¶¶ 24.

Again, it is important to note that the presence of Malic Acid in fruits is associated with two of the five taste sensations, sweetness and sourness, which are the main taste sensations of Defendants' products. *See* Exhibit 3; Exhibit 4; FAC ¶¶ 17-26. Therefore, when consumers put any of the products listed in the FAC in their mouths, the specialized receptor cells on their tongues will detect DL-Malic Acid in a combination with sugar, which will create the sweet and sour taste sensations fundamental to the characterizing fruit flavors of Defendants' products. *See* Exhibit 1, which defines taste sensations; Exhibit 2, which explains that Malic Acid combines with sugar to create the sweetness and tartness of fruit juices; FAC ¶¶ 17-26.

Finally, the FAC alleges how Defendants' illegally and fraudulently labeled their products. FAC ¶¶ 27-45. The Federal regulations provide that if food products contain any artificial flavor that simulates, **resembles**, or reinforces the characterizing flavor, then the name of the characterizing flavor "shall be accompanied by the word(s) 'artificial' or 'artificially flavored'…

7

e.g., 'artificial vanilla', 'artificially flavored strawberry', or 'grape artificially flavored.'" 21 C.F.R. § 101.22(i)(2); FAC ¶ 42. The IFDCA incorporates all food additive regulations of the Federal Food, Drug, and Cosmetic Act. 410 ILCS 620/21(d); FAC ¶ 30. Under the IFDCA, a food is misbranded if its labeling is false or misleading in any way, including if it contains any artificial flavoring, coloring, or chemical preservative, unless it bears labeling stating that fact. 410 ILCS 620/11(a)(k); FAC ¶ 43.

Under the FFDCA, artificial flavor is defined as "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 C.F.R § 101.22(a)(1); FAC ¶ 31. A combination of sugar and DL-Malic Acid in a ratio resembling a fruit flavor cannot be derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof. FAC ¶ 33. In this case, the combination of sugars and artificial DL-Malic Acid in Defendants' products is engineered to *resemble* the natural ratio of sugars and natural L-Malic Acid that make up the natural flavor of the characterizing fruit of Defendants' products. FAC ¶¶ 17-45. The natural flavor of the fruits in controversy is dependent on a specific ratio of sugar and L-Malic Acid, while Defendants' flavors depend upon a ratio of sugar and DL-Malic Acid. FAC ¶ 45.

The true flavors of Defendants' products are not pear, apple, strawberry, grape, or other fruits; rather, the characterizing flavors of Defendants' products are artificial DL-Malic Acid, sugar, and trace other components that *resemble but are not* pear, apple, strawberry, grape, or other fruits, because the sweetness and sourness of those natural fruits is not dependent on artificial DL-Malic Acid. *See* 21 C.F.R. § 184.1069; FAC ¶¶ 17-45. Therefore, Plaintiff has properly alleged

8

that Defendants violated the FFDCA and the IFDCA when they did not properly label their products as artificially flavored. Plaintiff has also properly alleged that Defendants violated the ICFA, committed common law fraud, were unjustly enriched, and breached express warranties, by labeling their products with the affirmative misrepresentation that those products contained no artificial flavors. *See* 21 C.F.R. § 101.22(i)(2); 815 ILCS 505/1; FAC ¶¶ 9-56.

### C. THE TOTALITY OF THE INFORMATION AVAILABLE TO PLAINTIFF SHOWS THAT A REASONABLE CONSUMER COULD BE DECIEVED BY DEFENDANTS' LABELS.

The "reasonable consumer" standard requires that a plaintiff allege conduct that could deceive a reasonable consumer. *In re: 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 920-21 (N.D. Ill. 2017), citing *Phillips v. DePaul Univ.*, 19 N.E.3d 1019, 1031 (Ill. App. 2014). Under this standard, the "allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005).

In this case, Plaintiff has properly alleged that a reasonable consumer could have been deceived by Defendants' conduct because Defendants affirmatively label their products as containing "No artificial flavors," when in fact the characterizing flavors of Defendants' products are artificial DL-Malic Acid, sugar, and other components that ***resemble but are not*** apple, pear, strawberry, grape, or other fruits. *See* Exhibit 2; Exhibit 3, which includes a chart of the concentrations of Malic Acid in various fruits; FAC ¶¶ 17-26, 45.

Plaintiff would not have been able to understand that Defendants' products contained artificial flavoring without an advanced understanding of organic chemistry, and without performing a chemical analysis on the products. FAC ¶ 47. To understand that Defendants' fruit-flavored products are artificially flavored, consumers would need to understand the following: (1)

9

the Malic Acid in Defendants' products is artificial DL-Malic Acid; and (2) fruit flavors are heavily dependent on the ratio of L-Malic Acid and sugar naturally found in fruits. *See* Exhibit 2; Exhibit 3, which includes a chart of the concentrations of Malic Acid in various fruits; Exhibit 4, which includes a chart of the concentrations of Malic Acid in various fruits; FAC ¶¶ 17-26.

The totality of the information available to Plaintiff, as alleged in the FAC, shows that Defendants misled their customers by claiming that the pear, apple, grape, strawberry, or other fruits constituting the characterizing flavors of their products are not artificial. FAC ¶¶ 17-45. Despite the "No artificial flavors" statements on Defendants' packages, the taste sensations created by their products are not from the natural characterizing fruit flavors they claim. FAC ¶¶ 17-45. Rather, Plaintiff has alleged that the sweet and sour taste sensations experienced by consumers of Defendants' products are created by a combination of artificial DL-Malic Acid, sugar, and other components that ***resemble but are not*** pear, apple, grape, strawberry, or other fruits. *See* FAC ¶¶ 17-26. D-Malic Acid does not exist naturally in fruits; therefore, any fruit flavor containing D-Malic Acid is artificial. *See* 21 C.F.R. § 184.1069; FAC ¶ 20. Furthermore, it bears repeating that all of these issues are issues of fact to be decided by the trier of fact, and inappropriate for Defendants to raise in a motion to dismiss.

Defendants raise five main points in support of their erroneous contention that Plaintiff's FAC does not plausibly allege that the products' labels are misleading to a reasonable consumer. First, Defendants claim that the allegations in the FAC support a finding that Malic Acid is being used as a flavor enhancer. Defendants' MTD, at p. 6. As explained above, whether Malic Acid can be categorized as a flavor enhancer or any other additive does not matter. The applicable FFDCA regulation defines "flavor enhancers" as "Substances added to supplement, enhance, or modify the original taste and/or aroma of a food, without imparting a characteristic taste or aroma of its own."

10

21 C.F.R. § 170.3(o)(11); FAC ¶ 36. No part of that definition declares that the use of artificial "flavor enhancers" would not or could not "modify the original taste and/or aroma of a food" so that the flavor of that food would be considered artificial. *See Id*. In other words, no part of the FFDCA regulations state that because Malic Acid could in some circumstances be considered a flavor enhancer, that it cannot also make the characterizing fruit flavors of Defendants' products artificial. Whether one considers Malic Acid to be a flavor enhancer or a flavor, artificial DL-Malic Acid in Defendants' products makes the characterizing fruit flavors of those products artificial. FAC ¶¶ 36-39.

Second, Defendants argue that Malic Acid functions as a pH control agent because they listed Malic Acid as a stand-alone ingredient on their products' packaging as permitted by FDA regulations. Defendants' MTD, at p. 7. However, the conclusion of Defendants' argument is factually impossible. *See* Exhibit 2; FAC ¶¶ 17-26. It does not matter what the FDA approves or does not approve regarding labeling of pH control agents. Neither Defendants nor the FDA regulations control how molecules function and how specialized receptor cells in consumers' mouths detect chemicals. Defendants may claim that DL-Malic Acid is only balancing the pH of their products, but as the FAC explains in detail, Malic Acid is fundamental to the sweetness and tartness of fruit flavors. *See* FAC ¶¶ 17-26.

Furthermore, the FFDCA regulation defining the term "pH control agent" states, in its entirety, "pH control agents: Substances added to change or maintain active acidity or basicity including buffers, acids, alkalis, and neutralizing agents." 21 C.F.R. § 170.3(o)(23); FAC ¶ 37. No part of that definition declares that the use of artificial "pH control agents" would not or could not change the original taste of a food so that the original flavor of that food would be considered artificial. *See Id*. In other words, no part of the FFDCA regulations state that because Malic Acid

11

could be considered a pH control agent, it cannot also make the characterizing fruit flavors of Defendants' products artificial. *See Id.* Therefore, whether or not Malic Acid can be a pH control agent, plaintiff has properly alleged that the artificial DL-Malic Acid in Defendants' products renders the characterizing fruit flavors of their products artificial. FAC ¶¶ 36-39.

Third, Defendants argue that Plaintiff's claims about the function of Malic Acid in fruit flavors are wrong because FDA regulations permit Malic Acid in foods that may only contain natural flavoring. Defendant's MTD, at p. 8. Defendants' argument is scientifically inaccurate and misrepresents the allegations in Plaintiff's FAC, in that Defendants refer to Malic Acid generally as an approved ingredient. Defendant's MTD, at p. 8. Malic Acid can refer to pure natural L-Malic acid or to artificial DL-Malic Acid. 21 C.F.R. § 184.1069; FAC ¶ 20. If Defendants added ***only*** natural L-Malic Acid to their products, this dispute would not exist, because L-Malic Acid is natural. *Id.* Likewise, any use of pure, natural L-Malic Acid by any company in any food does not violate FFDCA regulations regarding the labeling of natural flavors and would not constitute a misrepresentation under the ICFA. *See* 21 C.F.R § 101.22(a)(1); FAC ¶¶ 27-35. But that is not what Plaintiff is alleging here.

Defendants use of mayonnaise and French dressing as examples are poignant illustrations of why Defendants' arguments fail and why their MTD should be denied. Defendant's MTD, at p. 8. The main acidifying flavor ingredient of mayonnaise and French dressing is primarily vinegar (Acetic Acid). *See* 21 C.F.R. § 169.140(b)(1); 21 C.F.R. § 169.115(b)(1). Meanwhile, either the main or second most important acidifying flavor ingredient of apples, pears, strawberries, grapes, or other fruits is Malic Acid. *See* Exhibit 3; Exhibit 4; FAC ¶¶ 17-45. As alleged in the FAC, DL-Malic Acid, under certain circumstances that are not present in this case, could function as a flavor enhancer or pH control agent, such as when Malic Acid is not a core component of the natural

12

flavor of the food. FAC ¶ 38. Plaintiff alleges that Defendants' use of artificial DL-Malic Acid changes the fundamental flavors of Defendants' products because the characterizing flavors of Defendants' products are fruit. *See* Exhibit 4; FAC ¶ 39.

Fourth, Defendants argue that their alleged violations of the FFDCA and the IFDCA do not constitute unlawful practices within the meaning of the ICFA. Defendant's MTD, at p. 9. Plaintiff alleged in his FAC that Defendants violated the ICFA when they affirmatively stated on their products' packaging that those products contained "No Artificial Flavors". *See* 815 ILCS 505/2. Plaintiff alleges that by making the representation that their products contain no artificial flavors, Defendants made false promises, misrepresentations, concealments, suppressions, and omissions of material facts, with the intent that Plaintiff rely upon said false promises, misrepresentations, concealments, suppressions, and omissions of material facts. FAC ¶ 77. Plaintiff alleged that Defendants employ professional chemists to create the chemical flavor formulas of Defendants' products. FAC ¶ 54. Plaintiff also alleged that therefore, Defendants through their employees, knew or should have known that DL-Malic Acid is not naturally occurring, and that by adding DL-Malic Acid to their products, the natural flavoring of those products would be fundamentally changed. FAC ¶ 54. Defendants' alleged violations of the FFDCA and the IFDCA form the basis of the alleged misrepresentations that Plaintiff claims violate the ICFA – that the products contain "No artificial flavors." FAC ¶ 44.

Finally, Defendants' argue that no reasonable consumer would interpret the term "flavors" on the fruit snacks to encompass Malic Acid. Defendant's MTD, at p. 11. Defendant cites *Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813 (E.D. Pa. 2017), in an attempt to compare the claims raised in Plaintiff's FAC to the claims raise by the plaintiff in the *Hu* case. However, *Hu* is distinguishable from this case. The plaintiff in *Hu* asserted claims for violations of New York's consumer

protection laws by alleging the statement "No Preservatives Added" on various products' labels was false, because the products contained citric acid. 251 F. Supp. 3d at 816–17. The *Hu* complaint contained a series of generalized assertions about citric acid's potential use as a preservative but did not plead any facts to show that citric acid functioned as a preservative in the defendant's products. *Id.* at 821–22. In contrast, the FAC in this case alleges in extensive detail how Malic Acid functions in fruit flavors and therefore must function in Defendants' fruit flavored products. FAC ¶¶ 17-45. Based on the allegations in Plaintiff's FAC, it is factually impossible for DL-Malic Acid to not fundamentally alter the original fruit flavors of Defendants' products, regardless of the function Defendants' claim that Malic Acid could serve. FAC ¶¶ 17-45. No reasonable consumer would interpret the term "flavors" on the packaging of Defendants' fruit flavored products to exclude the core components of those fruit flavors, which includes Malic Acid. *See* FAC ¶¶ 17-45. If a layperson read and understood the chemistry explained in the FAC, he or she should immediately understand that Defendants' "No artificial flavors" statements on their labels are fraudulent.

### D. PLAINTIFF'S COMMON LAW FRAUD, UNJUST ENRICHMENT, AND BREACH OF EXPRESS WARRANTY CLAIMS ARE SUFFICIENTLY PLED.

The FAC alleges in extensive detail how Malic Acid functions in fruit flavors and therefore must function in Defendants' fruit flavored products. FAC ¶¶ 17-45. Based on the allegations in the FAC it is factually impossible for DL-Malic Acid not to fundamentally alter the original fruit flavors of Defendants' products, regardless of the function Defendants' claim that Malic Acid could serve. FAC ¶¶ 17-45. Therefore, as alleged in the FAC, Defendants' labels claiming their products contain "no artificial flavors" are fraudulent and misleading to a reasonable consumer. FAC ¶¶ 17-56. Plaintiff's common law fraud claims do not fail because, as alleged in the FAC,

14

Defendants' representations that the Products contain no artificial flavors constitute misrepresentations of material fact, and Plaintiff relied on those misrepresentations, suffering injuries as a result. FAC ¶¶ 77, 85, 86.

Plaintiff's unjust enrichment claims likewise do not fail. As alleged in the FAC, Defendants have been unjustly enriched by retaining the revenues derived from Plaintiff's purchase of the products based on the false statements that the products contain no artificial flavors. FAC ¶ 89. Plaintiff's breach of express warranty claims also do not fail. As alleged in the FAC, the products contain artificial flavors, which does not conform to the express warranties Defendants made to Plaintiff that the products supposedly contain no artificial flavors. FAC ¶ 96.

### E. PLAINTIFF'S CLAIMS ARE NOT PREEMPTED.

Under the FFDCA, an artificial flavor is defined as "any substance, the function of which is to impart taste, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 C.F.R § 101.22(a)(1); FAC ¶ 31. If food products contain any artificial flavor that simulates, resembles or reinforces the characterizing flavor, the name of the characterizing flavor "shall be accompanied by the word(s) 'artificial' or 'artificially flavored'… e.g., 'artificial vanilla', 'artificially flavored strawberry', or 'grape artificially flavored.'" 21 C.F.R. § 101.22(i)(2); FAC ¶ 42.

The FAC makes no claims and imposes no obligations inconsistent with the FFDCA regulations. As alleged in the FAC, Defendants' products contain artificial DL-Malic Acid, which in turn makes the characterizing fruit flavors of Defendants' products artificial. FAC ¶ 12. The flavors of apples, grapes, pears, strawberries, and other fruits are a combination of sugars, natural L-Malic Acid, lipids, and a blend of volatile compounds. *See* Exhibit 2. The characterizing flavors

15

of Defendants' products are an engineered combination of artificial DL-Malic Acid, sugar, and trace other components that *resemble but are not* pear, apple, grape, strawberry, or other fruits, because no fruit on earth contains artificial DL-Malic Acid. See 21 C.F.R. § 184.1069; Exhibit 2; FAC ¶¶ 17-45. The obligation Plaintiff seeks to impose on Defendants, as alleged in the FAC, is that because their food products contain the above-described artificially engineered combination of components resembling fruit flavors, Defendants must not label those products as containing "No artificial flavors." See 21 C.F.R. § 101.22(i)(2); FAC ¶¶ 17-45.

    F.    **PLAINTIFF HAS STANDING TO REQUEST AN INJUNCTION.**

A Plaintiff may sufficiently plead the likelihood of recurring economic injury required for injunctive relief, where he or she alleges that the deceptive advertising is "company-wide, pervasive, and continuous." *Le v. Kohls Dep't Stores, Inc*., 160 F. Supp. 3d 1096, 1109 (E.D. Wis. 2016); *Muir v. NBTY, Inc.,* No. 15 C 9835, 2016 WL 5234596, at *10 (N.D. Ill. Sept. 22, 2016) (holding that a Plaintiff in a consumer products class action could seek injunctive relief where the plaintiff was able to show that the defendant's fraudulent conduct was ongoing).

In this case, Plaintiff has clearly alleged a violation of the ICFA. FAC ¶¶ 9-56. Plaintiff's claims are not based solely on conjecture. If any member of the public goes to a grocery store today, he or she can buy the products alleged in the FAC with packaging that contains the claims that they are free from artificial flavors. Until Defendants conduct is stopped, every single time a consumer buys one of Defendants' fraudulently labeled products, he or she could be deceived. FAC ¶¶ 9-56. Plaintiff has alleged that Defendants' expressly misleading statements violate the ICFA. FAC ¶¶ 74-80. The continuing harm warranting a permanent injunction in this case is that Defendants are continuing to mispresent to anyone who reads their products' packaging that those products contain no artificial flavors. FAC ¶¶ 9-56.

### G. SHOULD THE COURT GRANT DEFENDANTS' MOTION TO DISMISS, PLAINTIFF SHOULD BE GIVEN THE OPPORTUNITY TO AMEND HIS COMPLAINT.

Fed. R. Civ. P. 15(a)(2) states that "[t]he Court should freely give leave [to amend a pleading] when justice so requires." Leave to file an amended complaint should be granted so long as is it not sought for reasons such as undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment. *McDaniel v. Loyola Univ. Med. Ctr.*, 317 F.R.D. 72, 76 (N.D. Ill. 2016), quoting *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004). See also *Patrick v. City of Chicago*, 103 F.Supp.3d 907, 916 (N.D. Ill. 2015); *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("When a complaint fails to state a claim for relief, the plaintiff should ordinarily be given an opportunity, at least upon request, to amend the complaint to correct the problem if possible.").

Should the Court feel that certain necessary allegations are lacking from Plaintiff's FAC and therefore grant Defendants' MTD, Plaintiff requests the Court grant Plaintiff leave to file a Second Amended Complaint to correct any such deficiencies. Justice would require (as stated in Fed. R. Civ. P. 15(a)(2)) that Plaintiff be granted leave to file a Second Amended Complaint so that Defendants' alleged fraudulent conduct in the labeling of its products not be allowed to go unchecked.

### III. CONCLUSION

For the reasons explained above, Plaintiff respectfully requests this Court deny Defendants' Motion to Dismiss, and all of the arguments contained therein, with prejudice. First, Defendants' arguments ask the Court to determine issues of disputed fact, which is inappropriate for a motion to dismiss. Second, Plaintiff's FAC explains in detail how Malic Acid functions in

17

fruits flavors, and how Defendants' inclusion of artificial DL-Malic Acid in their fruit flavored products makes those products artificially flavored. Third, the totality of the information available to Plaintiff shows that a reasonable consumer could be deceived by Defendants' "No artificial flavors" misrepresentations. Fourth, Plaintiff's fraud, unjust enrichment, and breach of warranty claims do not fail. Defendant's "No artificial flavors" statements on the products' packaging are misrepresentations of material fact upon which Plaintiff relied to his detriment. Said statements also served to unjustly enrich Defendants and constituted express warranties regarding the products, which were breached. Finally, Defendants' arguments that Plaintiff does not have standing to seek an injunction are erroneous, as Defendants' conduct will continue to harm members of the putative class and the general public if allowed to continue.

WHEREFORE, Plaintiff respectfully requests this Honorable Court deny Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) with prejudice, order Defendants to file an Answer to Plaintiff's First Amended Complaint, and award such other relief as the Court deems appropriate under the circumstances. In the alternative, Plaintiff requests the Court grant him leave to file a Second Amended Complaint to correct any deficiencies in his First Amended Complaint.

                              RESPECFULLY SUBMITTED,

                              DAVID HAYES

By:   /s/ Todd M. Friedman
        Attorney for Plaintiff
        Illinois Attorney No. 6276496
        Law Offices of Todd M. Friedman, P.C.
        21550 Oxnard Street, Suite 780
        Woodland Hills, California 91367
        Phone: (323) 306-4234
        Fax: (866) 633-0228
        tfriedman@toddflaw.com

/s/ David B. Levin
Attorney for Plaintiff
Illinois Attorney No. 6212141
Law Offices of Todd M. Friedman, P.C.
333 Skokie Blvd., Suite 103
Northbrook, Illinois 60062
Phone: (224) 218-0882
Fax: (866) 633-0228
dlevin@toddflaw.com

/s/ Steven G. Perry
Attorney for Plaintiff
Illinois Attorney No. 6330283
Law Offices of Todd M. Friedman, P.C.
333 Skokie Blvd., Suite 103
Northbrook, Illinois 60062
Phone: (224) 218-0875
Fax: (866) 633-0228
sperry@toddflaw.com

## CERTIFICATE OF SERVICE

I hereby certify that, on December 12, 2019, a copy of the foregoing Response to Defendants' Motion to Dismiss was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ Todd M. Friedman
Attorney for Plaintiff